Filed 1/21/22  P. v. Brennan CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW SHANE BRENNAN,<br><br>  Defendant and Appellant. | 2d Crim. No. B306929<br>(Super. Ct. No. 17F-03474)<br>(San Luis Obispo County) |

Matthew Shane Brennan appeals from the judgment after a jury convicted him of first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a)) and theft from an elder (Pen. Code, § 368, subd. (d)).  The trial court sentenced him to four years in state prison.  Brennan contends the judgment should be reversed because the court erroneously admitted impeachment evidence.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY
### *The burglary of S.E.'s home*

In February 2017, Brennan helped a contractor install lights on S.E.'s garage. A few days later, S.E. left her house around 9:00 a.m. to run some errands. When she returned two hours later, a white truck was parked in her driveway. She honked her horn and Brennan came around the corner. S.E. was not surprised to see him because the contractor had promised to send someone out that day to pick up a door lying in the side yard of her house. S.E. told Brennan that he was blocking access to her garage. He apologized, got into his truck, and drove away.

S.E. went inside and ate lunch. When she finished, she went outside, and in the side yard she saw that two safes normally stored in a bedroom closet were sitting on the ground. Her bedroom window screen had been removed and the window was open. The side gate, which was usually locked, was also open.

S.E. called her contractor and explained what she had seen. She also told him that she had seen Brennan at her house that morning. The contractor went to S.E.'s house and inspected the damage. He then called the police.

S.E. told the responding officer that she recognized Brennan's truck because he had parked it on the street a few days earlier when installing the lights on her garage. She was certain that the person she had seen that morning was Brennan. She picked Brennan out of a photographic lineup the next day.

### *Motion to admit impeachment evidence*

Prosecutors charged Brennan with burglary and theft. Prior to trial, they moved to admit evidence of Brennan's two prior convictions and his conduct in a 2018 case for

2

impeachment purposes. The trial court denied the motion with respect to the 2018 case. The jury was subsequently unable to reach a unanimous verdict, and the court declared a mistrial.

Prior to retrial, prosecutors again moved to admit evidence related to Brennan's conduct in the 2018 case, but this time limited the scope of the evidence to the fact that Brennan lied to the investigating officer. At the hearing on the motion the trial court noted that it had not admitted the evidence in Brennan's first trial, but "having . . . sat through all the evidence in the prior trial, [it was] apparent . . . that [Brennan's] credibility [was] basically the crux of the case." The probative value of the evidence was thus "higher than [the court] previously appreciated." Additionally, this time prosecutors sought to present "a pared-down portion of [Brennan's] alleged bad acts," which went "to the heart of the credibility issue and [didn't] necessarily present too much information that would lead a jury to make improper or draw improper conclusions." The court granted prosecutors' motion to admit the evidence.

*Trial*

At trial, Brennan admitted that he owned a white truck, but denied that he was at S.E.'s house on the morning of the burglary. He said that the other men who helped to install the lights on S.E.'s garage also drove white trucks.

Brennan said that he had worked on S.E.'s house twice, once in 2016 and once in 2017. He had never seen safes inside her home, had never been in her side yard, and had never been in her bedroom. His boss had never asked him to pick up a door from S.E.'s home.

Brennan said that his house was vandalized the same morning S.E.'s house was burglarized. He called police and

3

an officer arrived around 10:00 a.m.  The officer left a half-hour later, and Brennan arrived at work around 11:00 a.m.

Brennan admitted that he stole from his employer in 1999 and passed a bad check in 2012.  He also acknowledged that prosecutors had charged him with making a threatening phone call and sending threatening texts and emails to an ex-girlfriend and her new boyfriend.  Brennan said that he had spoken with a sheriff's deputy about these charges, but denied lying to him.  He said that the last time he contacted his ex-girlfriend and her boyfriend was January 21 or 22, 2018.  He acknowledged that multiple emails and texts were sent from his accounts after that date but did not know if he had sent them.

The deputy testified that he listened to several threatening voicemails left for Brennan's ex-girlfriend and her boyfriend.  He recognized Brennan's voice on the messages.  The deputy later determined that the messages had been sent from Brennan's phone on January 26, 2018.

DISCUSSION

Brennan contends the trial court prejudicially erred when it permitted prosecutors to present impeachment evidence in his second trial that had been excluded in his first.  We disagree.

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931.)  "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for

4

the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Ibid.*) "Additional considerations apply when the proffered impeachment evidence is misconduct other than a prior conviction . . . because such misconduct generally is less probative of immoral character or dishonesty and may involve problems involving proof, unfair surprise, and the evaluation of moral turpitude." (*Id.* at pp. 931-932.) A court "'should [thus] consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice [that] outweighs its probative value.' [Citation.]" (*Id.* at p. 932.) We review for abuse of discretion. (*Ibid.*)

There was no abuse of discretion here. Brennan testified that he was not at S.E.'s house the day it was burglarized, but rather was at home and then working at another job. His credibility was thus central to the case. And as he concedes in his opening brief, whether he lied to a sheriff's deputy about voicemails he left his ex-girlfriend and her boyfriend "would be pertinent to his credibility as a witness." (See, e.g., *People v. Sanchez* (2019) 7 Cal.5th 14, 58 [evidence that defendant lied probative of credibility].)

The trial court properly weighed the probative value of this impeachment evidence against the risk of prejudice, undue consumption of time, and confusion of the issues. (Evid. Code, § 352.) It found that the risk of undue prejudice was low, as prosecutors limited the impeachment evidence to the fact that he may have lied to the deputy. Presentation of the evidence would not consume much time, as the deputy was going to testify only on rebuttal. And it was unlikely to confuse the issues, as the

5

testimony was brief and focused on a single act unrelated to the burglary at S.E.'s home.

Without citing any authority, Brennan counters that the trial court's decision to change its ruling from excluding the impeachment evidence in his first trial to admitting it in his second demonstrates that the latter ruling was based on a misunderstanding or misapplication of the law. But courts have broad discretion to reconsider previous rulings. (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1246.) And the record shows that the court below weighed the relevant factors before admitting the impeachment evidence in Brennan's second trial. No more was required. (*People v. Williams* (1997) 16 Cal.4th 153, 214.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

6

Craig B. Van Rooyen, Judge

Superior Court County of San Luis Obispo

_____

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.